00496.19161/MGD

FILED

2014 DEC -9 A 10: 26

U.S. DISTRICT C...
...STERN DIST. 1...

. . . . . . . . . . . . . . .

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

MOUNT VERNON FIRE
INSURANCE COMPANY,

      Plaintiff,

v.

CANCER FUND OF AMERICA, INC.;
JAMES REYNOLDS, SR.; and
KYLE EFFLER,

      Defendants.

CIVIL ACTION NO. 3:14-CV-568

Reeves/ Guyton

---

## COMPLAINT FOR RESCISSION, DECLARATORY JUDGMENT, AND DAMAGES

---

Mount Vernon Fire Insurance Company through counsel, seeks to have insurance coverage which it had issued to the Defendant, Cancer Fund of America, Inc. declared void *ab initio* due to material misrepresentations made in the application for insurance. Alternatively, Mount Vernon Fire Insurance Company seeks a declaration that it has no duty to indemnify or defend Cancer Fund of America, Inc., James Reynolds, Sr., Kyle Effler or any other person or entity claiming to be insured by reason of the fact that certain claims now being asserted against them arise from conduct specifically excluded under the subject policy of insurance or are not otherwise covered pursuant to the policy's terms and conditions. For its Complaint for Rescission, Declaratory Judgment, and Damages, Mount Vernon Fire Insurance Company states to the court the following:

# I.

## PARTIES

1.01. Plaintiff, Mount Vernon Fire Insurance Company ("MVFIC"), is a Pennsylvania corporation, with its principal place of business located in the state of Pennsylvania. MVFIC is an insurer admitted to write insurance in the State of Tennessee.

1.02. Defendant, Cancer Fund of America, Inc. ("CFA"), is a corporation claiming federal income tax exempt status pursuant to Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C § 501(c)(3). CFA was organized under the laws of the state of Delaware in 1987, and has its principle place of business in Knoxville, Tennessee. CFA can be served through its agent for service of process in Tennessee, Kyle Effler at 2901 Breezewood Lane, Knoxville, Tennessee 27921-1036.

1.03. Defendant James Reynolds, Sr. ("Reynolds"), since 1987 has been the executive director of CFA and President of its board of directors. Reynolds is a citizen and resident of the state of Tennessee and can be served with process at his place of residence at 5221 Bittersweet Rd., Knoxville, Tennessee 37918-9436 or his place of business at 2901 Breezewood Lane, Knoxville, Tennessee 27921-1036.

1.04. Defendant, Kyle Effler ("Effler") has been employed at CFA since 1990, and has functioned as its accountant and chief financial officer. Effler is a citizen and resident of the state of Tennessee and can be served with process at his place of residence at 509 Banury Rd., Knoxville, Tennessee 37934-4712 or his place of business at 2901 Breezewood Lane, Knoxville, Tennessee 27921-1036.

2

## II.

### JURISDICTION AND VENUE

2.01.    MVFIC brings this action for declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 and Rule 57 of the Federal Rules of Civil Procedure as an actual case or controversy exists between the parties as to the existence or applicability of a policy of insurance.

2.02.    This Court has jurisdiction to hear this cause pursuant to 28 U.S.C. § 1332 as it is between citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and cost.

2.03.    This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391 as a substantial part of the events and omissions giving rise to this claim occurred in this judicial district and the insurance policy which is the subject of this action was issued to CFA and delivered to it in this judicial district at its principle place of business.

## III.

### BACKGROUND

3.01.    Defendant CFA first applied for a Non Profit Directors and Officers Liability Insurance policy ("the policy") with MVFIC by completing an application which was signed by Reynolds on July 30, 2007. Through CFA's agent and broker CFA thereafter submitted the Application. A copy of the "Application" is attached as **Exhibit "A"**.

3.02.    The "Application" under **Section VI. CLAIM INFORMATION**, asked the question:

> *18.    Within the last 5 years, has any inquiry, complaint, notice of hearing, claim or suit been made (including, but not limited to, Equal Opportunity Commission, State Human Rights Boards, Municipal, State, or Federal*

3

Regulatory Authorities),against the Organization, or any person proposed for insurance in the capacity of either Director, Officer, Trustee, Employee or Volunteer of the Organization?

The answer supplied to this question was **"No."**

3.03. The "Application" under **Section VI. CLAIM INFORMATION**, asked the question:

19. *Is any person proposed for this insurance aware of any fact, circumstance, or situation, which may result in a claim against the organization or any of its Directors, Trustees, Officers, Employees, or Volunteers?*

The answer supplied to this question was **"No."**

3.04. Above the signature line on page 3 of 3 of the "Application" the statement read:

*The undersigned declares that to the best of his/her knowledge and belief the statements set forth herein are true. The undersigned further declares that any occurrence or event taking place prior to the effective date of the insurance applied for which may render inaccurate, untrue, or incomplete any statement made will immediately be reported in writing to the insurer and the insurer may withdraw or modify any outstanding quotations and/or authorization or agreement to bind the insurance. The insurer is hereby authorized, but not required, to make any investigation and inquiry in connection with the information, statements, and disclosures provided in this Application. The decision of the insurer not to make or to limit any investigation or inquiry shall not be deemed a waiver of any rights by the insurer and shall not estop the insurer from relying on any statement in this Application in the event the policy is issued. It is agreed that this Application shall be the basis of the contract should a policy be issued and it will be attached and become a part of the Policy.*

3.05. Immediately below the statement which is set forth in the preceding paragraph 3.04, the "Application" was signed by *James T. Reynolds* as *President* on July 30, 2007.

4

3.06. CFA's insurance broker and agent was The Assurance Center in Knoxville, Tennessee. Through The Assurance Center, CFA submitted the "Application."

3.07. Based upon the "Application" submitted by CFA, MVFIC agreed to issue to CFA in Knoxville, Tennessee an initial policy bearing no. NDO2009078 for a term of one (1) year commencing on August 1, 2007 and expiring on August 1, 2008.

3.08. Based upon the "Application" and information submitted by CFA, MVFIC agreed each succeeding year to renew the policy through the August 1, 2012 renewal term. The policy which had been renewed on August 1, 2012 was in effect till August 30, 2013.

3.09. In addition to the "Application," information submitted by CFA through CFA's broker and agent and upon which MVFIC relied when it agreed to continue to renew the policy was the Great American Insurance Group Proposal Form ("Proposal Form") signed by *Kyle Effler* as *CFO* (Chief Financial Officer) on July 29, 2009. A copy of the "Proposal Form " is attached as **Exhibit "B"**.

3.10. The Proposal Form at paragraph 7 asked the following question:

> *Has there been during the last year, or are there now pending, any civil, criminal, administrative or arbitration proceedings (including any proceeding initiated before the Equal Employment Opportunity Commission) brought against the Organization or any of its Subsidiaries, or any proposed Insured?*
> *If "Yes" to any of the above, provide details in the attachment to this Proposal Form including the total defense costs, judgments and/or settlements.*

The answer supplied to this question was **"No."**

3.11. MVFIC relied upon the "Application" as being truthful, correct, and accurate.

5

3.12. MVFIC continually relied upon the "Application" as being truthful, correct, and accurate and from the time of the renewal of the coverage on August 1, 2009, MVFIC also relied on the representations made by CFA through its CFO, Kyle Effler, as truthful, correct and accurate.

3.13. Based upon the "Application" and information CFA submitted, MVFIC agreed to provide insurance coverage for CFA under an uninterrupted series of insurance policies issued to CFA in Knoxville, Tennessee beginning on August 1, 2007, with policy number NDO2009078 followed sequentially by policy numbers NDO2009078A, NDO2009078B, NDO2009078C, NDO2009078D, and concluding with the "Subject Policy" which bears policy number NDO2009078E. A copy of the "Subject Policy" and uninterrupted series of policies are attached collectively as **Exhibit "C"**.

3.14. By the terms of both the "Application" and the "Subject Policy", the "Application" was incorporated into and became a part of the "Subject Policy."

**Underlying Claim –** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3.15. In August 2014, CFA was sent a demand by or on behalf ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ copies are attached hereto and filed under seal contemporaneously with this Complaint as **Exhibit "D"**.

6

3.16. ████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
███████████████████████

3.17. The ██████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
██████████████████

3.18. In an apparent attempt to enforce these ██████████████
████████████ and obtain relief as a result ███████████████████
██████████████████████████████ demand was made.

3.19. The ██████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

3.20. The ███████████████████████████

3.21. The 

3.22. The

3.23. The

3.24. The

3.25. The

3.26. The

3.27. The

3.28. The

3.29. The

8



3.30. The ██████████████████████████████████████████

3.31. The ██████████████████████████████████████████

3.32. The ████████████████████████████

3.33. CFA received ████████████████ and forwarded it to MVFIC in August 2014, for the purpose of making a claim under the "Subject Policy." CFA, Reynolds, and Effler have subsequently made demands that they be defended and indemnified against the claims which may be brought against them in connection with ████████████████

3.34. None of the other entities or individuals against which or whom claims were asserted ████████████████████████ are insured by MVFIC and none of them have claimed to be insured under the "Subject Policy."

3.35. At the request of Reynolds, MVFIC, while reserving its rights, was able to gain an extension of time so that the merit and substance of the allegations and claims ████████████████ could be investigated and examined.

9

3.36.  Subject to a reservation of all of its rights under the "Subject Policy" and law, MVFIC agreed to undertake an investigation and defense of CFA, Reynolds, and Effler to the claims alleged against them ███████████████████

3.37.  As a result of its investigation into the allegations and facts surrounding the August 2014 claims and issues affecting coverage under the subject policy, it has now come to the attention of MVFIC that the representations made by CFA in the "Application" and information subsequently provided were not truthful, correct, or accurate.

3.38.  MVFIC has now learned that the submission by CFA of the "Application" and information amounted to material misrepresentations by CFA in its application for insurance coverage.

**CFA's Previous, Conduct, and History**

3.39.  In addition to the allegations and claims made against CFA ████ ██████████████████ MVFIC has learned that CFA has a history of claims, charges and regulatory actions having been brought against it in various states across the country █

███████████████████████████████████████████████

███████████████

3.40.  It has been discovered that in 1992, the Commonwealth of Pennsylvania filed a civil action against CFA alleging that CFA's practices with respect to reporting gifts-in-kind in 1990 and 1991 violated state laws governing the solicitation of funds by charitable organizations.  This action was settled with the State of Pennsylvania in 1995.

10

3.41. It has been discovered that in 1992, the State of Connecticut filed a civil action against CFA alleging that CFA's practices with respect to reporting gifts-in-kind in 1990 and 1991 violated state laws governing the solicitation of funds by charitable organizations in that state. This action was settled with the State of Connecticut in 1995.

3.42. It has been discovered that in 1995, the State of New York filed a complaint against CFA alleging that solicitations sent to potential contributors were false and misleading and in violation of various provisions of state law. In 1997, a settlement agreement was reached which included a requirement that CFA pay a total of $180,000.00 over 4 years. As of December 31, 2006, the balance due and remaining owed by CFA in connection with this claim was $90,000.00.

3.43. It has been discovered that in January of 2001, the state of Vermont reached a $386,000.00 settlement in a lawsuit it filed against a paid fundraiser and three charities, including CFA for misleading prospective donors about how their donations would be used in violation of the Vermont Consumer Fraud Act. CFA ultimately paid $92,000 towards the settlement. $41,000.00 of CFA's obligation was not paid until 2003.

3.44. It has been discovered that the State of Massachusetts filed a suit against CFA and others for false and misleading and deceptive solicitations in violation of various statutes. A stipulated preliminary injunction was issued. The case was set for a December 6, 2004, trial, during which thirty five (35) witnesses were expected to testify. The trial was expected to last up to three (3) weeks. In January 2005 an Order and Final Judgment was entered into with the Commonwealth of Massachusetts in settlement of the claims. Although no findings were made, CFA agreed to comply with all provisions

11

of Massachusetts Law governing charitable solicitations and to pay $75,000.00 of which $37,500.00 remained unpaid as of December 31, 2004. The unpaid amount of this claim was due no later than December 31, 2005.

3.45. In 2007, The state of Georgia was engaged in the investigation and examination of certain acts and practices of CFA which resulted in civil action no. 2007-cv-31522, in the Superior Court of Fulton County, styled *JOSEPH B. DOYLE, ADMINISTRATOR FAIR BUSINESS PRACTICES ACT v. CANCER FUND OF AMERICA, INC.* in which it was alleged that CFA used and/or was using unfair or deceptive acts or practices in the conduct of unlawful consumer transactions and consumer acts or practices in trade or commerce in violation of the Georgia Fair Business Practices Act.

3.46. Specifically, the state of Georgia charged that CFA used direct mail solicitations that were misleading to consumers and that it caused an advertisement to be published in the *Atlanta Journal Constitution* that was inaccurate.

3.47. In settlement of the claims brought in Georgia and to avoid further formal legal action, CFA agreed to pay $50,000.00 to the Governor's Office of Consumer Affairs; pay court costs to the Clerk of the Superior Court of Fulton, County; make assurances of full compliance with the law; and undertake certain future reviews, audits and reporting.

## IV.

### COUNT I - RESCISSION

4.01. MVFIC incorporates by reference each and every allegation made in the preceding paragraphs as though set forth fully verbatim here and now.

12

4.02.   Given the existence of the **New York** claim at the time CFA applied for the policy and insurance, CFA made misrepresentations in the "Application" it submitted.

4.03.   Given the existence of the **Massachusetts** claim at the time CFA applied for the policy and insurance, CFA made misrepresentations in the "Application" it submitted.

4.04.   Given the existence of the **Vermont** claim at the time CFA applied for the policy and insurance, CFA made misrepresentations in the "Application" it submitted.

4.05.   Given the existence of the **Georgia** claim at the time CFA applied for the policy and insurance, CFA made misrepresentations in the "Application" it submitted.

4.06.   Given the existence of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ CFA, Reynolds, and Effler knew, or reasonably should have known, that claims against them could and/or were likely to result. CFA, Reynolds, and Effler's failure to disclose these facts, circumstances, and conditions constituted a misrepresentation in the procurement of insurance coverage.

4.07.   CFA's misrepresentations in the "Application" of which MVFIC has now become aware, were known by CFA, Reynolds, and Effler to be false when made. These misrepresentations were made with actual intent to deceive.

4.08.   CFA's misrepresentations in the "Application" of which MVFIC has now become aware, were material misrepresentations which increased the risk of loss to MVFIC.

13

4.09. Had CFA fully and truthfully completed the "Application" MVFIC would never have agreed to provide the insurance coverage as is set forth in the "Subject Policy" of insurance or the preceding uninterrupted series of policies beginning with policy number NDO2009078.

4.10. Based upon the material misrepresentations made by CFA in the "Application" the insurance coverage and "Subject Policy" issued by MVFIC is void *ab initio* pursuant to Tennessee Code Annotated § 56-7-103. MVFIC, therefore, has no duty to CFA, Reynolds or Effler to defend, indemnify or otherwise represent or protect their interests under the "Subject Policy" or coverages provided therein.

4.11. Based upon the material misrepresentations made by CFA in the "Application," the insurance policies and coverage are subject to rescission by MVFIC and MVFIC, therefore, has no duty to CFA, Reynolds or Effler to defend, indemnify or otherwise represent or protect their interests under any insurance policy or coverages issued by MVFIC.

4.12. The total premiums charged for coverage provided under policy numbers NDO2009078, NDO2009078A, NDO2009078B, NDO2009078C, and NDO2009078D together with the "Subject Policy" NDO2009078E was $47,892.00.

4.13. Upon a finding that the "Subject Policy" and coverages are void *ab initio,* pursuant to any future Orders of the Court, MVFIC will tender a return of the premiums it has actually been paid by CFA for coverage under the policies.

14

# V.

## DECLARATION THAT CLAIMS ARE NOT COVERED
## OR ARE OTHERWISE LIMITED

5.01. Notwithstanding that MVFIC is entitled to rescind the "Subject Policy" as set forth above, alternatively, the claims alleged ▓▓▓▓▓▓▓▓▓▓▓ are not covered or are otherwise excluded under the "Subject Policy."

5.02. The "Subject Policy" is a Claims Made Policy.

5.03. "The "Subject" Policy only covers those **Claims** first made against the **Insured** during the **Policy Period** or Extended Reporting Period, if purchased."

5.04. CFA elected to purchase an Extended Reporting Period. The Extended Reporting Period does not apply to a **Wrongful Act** committed after August 29, 2013.

5.05. Any Coverage under the "Subject Policy" for any **Claim**(s) first received and reported during the Extended Reporting Period shall be in excess over any other valid and collectible insurance providing coverage for such **Claim**(s).

5.06. Under the "Subject Policy's" Common Policy Conditions, section XI:

> This Policy shall be excess of and not contribute with other existing insurance, including but not limited to any insurance under which there is a duty to defend, unless such other insurance is specifically written to be in excess of this Policy.

5.07. Under the "Subject Policy's" Common Policy Conditions, section IV, paragraph C:

> If during the **Policy Period** the **Insured** shall become aware of any circumstances which could give rise to a **Claim** being made against the **Insured**, the **Insured** shall give written notice to the **Company** of the circumstances and the reasons for anticipating such a **Claim** with full particulars as to dates and persons involved. Such notice must be given to the **Company** within the Policy Period. Any **Claim** which is subsequently made against the **Insured** and reported to the **Company** as required by the Policy alleging, arising out of, based upon or

15

attributable to such circumstances or alleging any **Wrongful Act** . . . which is the same as or related to any **Wrongful Act** . . .alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was first given to the **Company.**

5.08.   Under the "Subject Policy's" Common Policy Conditions, section VI, paragraph A:

The **Insureds** represent that the particulars and statements contained in the **Application** are true and agree that (1) those particulars and statements are the basis of this Policy and are to be considered as incorporated into and constituting a part of the Policy; (2) those particulars and statements are material to the acceptance of the risk assumed by the **Company**; and (3) the Policy is issued in reliance upon the truth of such representations.

5.09.   MVFIC issued coverage under the "Subject Policy" "In . . . . reliance upon all statements made and information furnished to the **Company**, including the statements made in the **Application** and all attachments and materials submitted therewith subject to all the provisions of [the] Policy. . . . . ."

5.10.   The Insuring Agreement of the "Subject Policy," provides:

The **Company** will pay on behalf of the **Insured Loss** in excess of the RETENTION, not exceeding the Limit of Liability for which this Coverage Part applies, that the **Insured** shall become legally obligated to pay because of **Claims** first made against the **Insured** during the **Policy Period** or during the Extended Reporting Period, if applicable, for **Wrongful Acts** arising solely out of an **Insured's** duties on behalf of the **Organization**.."

5.11.   Under the Prior Acts Coverage Provision the "Subject Policy" provides:

Coverage shall apply to any **Claim** made against the **Insured** for **Wrongful Acts** arising solely out of the **Insured's** duties on behalf of the **Organization** committed prior to the expiration date of this Policy, or the effective date of cancellation or non-renewal of this Policy, provided that the **Claim** is first made during the **Policy Period**, or the Extended Reporting Period if applicable, and written notice of said **Claim** is reported to the **Company** as soon as practicable. There shall be no coverage for any **Claim** reported to the **Company** later than sixty (60)

16

days after the end of the **Policy Period** or after the expiration of the Extended Reporting Period, if applicable.

However, coverage shall not apply to any **Claim** based upon or arising out of any **Wrongful Act** or circumstance likely to give rise to a **Claim** of which the person or persons signing the **Application** had knowledge, or otherwise had a reasonable basis to anticipate might result in a **Claim**, prior to the earlier of:

A. The inception date of this Policy; or
B. The inception date of the first Policy of this type the **Company** has issued to the **Parent Organization**, provided that the **Company** has written continuous coverage for the **Parent Organization** from such date to the inception date of this Policy.

5.12. Under the "Subject Policy" **Application** is defined as:

(1) An application and any material submitted for this Policy and
(2) An application(s), including any material submitted, for all previous Policies issued by the **Company** providing continuous coverage until the inception date of this Policy.

The content of (1) and (2) above is incorporated by reference in [the] Policy as if physically attached hereto.

5.13. The "Subject Policy" defines **Wrongful Act** as

any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duties, or **Personal Injury Act** committed or allegedly committed;

(1) by the **Organization**; or
(2) by the **Individual Insureds** arising solely from duties conducted on behalf of the **Organization** or asserted against an **Individual Insured** because of (1) above.

It is further agreed that the same **Wrongful Act**, an interrelated series of **Wrongful Acts** or a series of similar or related **Wrongful Acts** by one or more **Insureds** shall be deemed to be one **Wrongful Act** and to have commenced at the time of the earliest **Wrongful Act**.

5.14. Under the "Subject Policy:"

**Claim**" means:
(1) Any written demand seeking money damages; or
(2) Any proceeding initiated against the **Insured**, including any appeal there from, before any governmental body legally authorized to render an

17

enforceable judgment or order for money damages or other relief against such **Insured** alleging that the **Insured** has committed, or is responsible for, a **Wrongful Act.**

A **Claim** shall be considered first made when the **Insured** or its legal representative or agent first receives notice of the **Claim**.

5.15. Under the "Subject Policy," by Endorsement - DO-TN (04/07) relevant to claims asserted in the "Government Action":

**"Loss"** means **Defense Costs**, damages and settlements, but does not include fines, penalties imposed by law, sanctions, taxes and matters deemed uninsurable under the law pursuant to which this policy shall be construed. This definition does not exclude punitive or exemplary damages or the multiplied portion of any multiple damage award unless such damages are uninsurable under applicable law.

5.16. Under the "Subject Policy," an interrelated series of wrongful acts or a series of similar or related wrongful acts are considered to be one wrongful act and to have commenced at the earliest of the first wrongful act.

5.17. Under the "Subject Policy," coverage does not apply to a claim based upon or arising out of any wrongful act or circumstance likely to give rise to a claim of which Reynolds had knowledge or a reasonable basis to anticipate might result in a claim prior to August 1, 2007.

## COUNT II - CLAIMS ARE NOT COVERED

5.18. MVFIC incorporates by reference each and every allegation made in the preceding paragraphs as though set forth fully verbatim here and now.

5.19. The ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5.20. The claims made against CFA ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18

██████████████████████████████████████

██████████████████████████████████████

████████████████████ all prior to August 1, 2007.

5.21. The claims asserted against CFA, Reynolds, and Effler ██████

██████████████████████████████████████

████████████████████████

5.22. Upon information and belief CFA knew or became aware of circumstances which could give rise to a **Claim** being made against it during previous policy periods yet failed to give written notice to the **Company** of the circumstances and the reasons for anticipating such a **Claim** together with full particulars as to dates and persons involved as required under the "Subject Policy." Should it be determined that CFA failed to report such circumstances the Company reserves the right to amend this Complaint and plead further in so far as the Company has suffered some prejudice or that the failure on the part of CFA to so report gives rise to any other policy defense.

### COUNT III - CLAIMS ARE EXCLUDED OR LIMITED

5.23. MVFIC incorporates by reference each and every allegation made in the preceding paragraphs as though set forth fully verbatim here and now.

5.24. The "Subject Policy" contains certain exclusions under section **IV. EXCLUSIONS** of form **DO-100 (04-07)** which state:

> The **Company** shall not be liable to make payment for **Loss** or **Defense Costs** in connection with any **Claim** made against the **Insured** arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:
>
> B. Any dishonest, fraudulent or criminal **Wrongful Act** by the **Insured**, however, this exclusion shall not apply unless and until a final adjudication or judgment is rendered against the **Insured** as to this conduct;

19

C. Any of the **Insureds** gaining any profit, remuneration or advantage to which the **Insured** was not legally entitled provided, however, this exclusion shall not apply unless and until a final adjudication or judgment is rendered against the **Insured** as to this conduct;

. . . . .

K. Any pending or prior litigation, administrative or regulatory proceeding, claim, demand, arbitration, decree, or judgment of which the **Insured** had written notice before the effective date of this Policy; or any fact, circumstance, event, situation, or **Wrongful Act** which before the effective date of this Policy was the subject of any notice to an **Insured** under any other similar policy of insurance to the **Insured;** or any future **Claims** or litigation based upon the pending or prior litigation or derived from the same or essentially the same facts, actual or alleged;

provided that, if this Policy is a renewal of a Policy or Policies previously issued by the **Company** and if the coverage provided by the **Company** was continuous from the effective date of the first such other Policy to the effective date of this Policy, the effective date of this Policy will mean the effective date of the first Policy under which the **Company** first provided continuous coverage to an **Insured**;

5.25.  The claims made against CFA, Reynolds, and Effler █████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████████ thus excluded under the "Subject Policy."

5.26.  The claims made against CFA, Reynolds, and Effler ███████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████ thus excluded under the "Subject

Policy."

5.27.  The claims made against CFA, Reynolds, and Effler ██████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████  thus excluded under the "Subject Policy."

20

**Relief Sought Does Not Constitute Loss**

5.28. A Loss under the "Subject Policy" relative ████████████████████ does not include the following:

      1.    fines,

      2.    penalties imposed by law,

      3.    sanctions,

      4.    taxes, and

      5.    matters which are deemed uninsurable by law. . . .

5.29. The ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████ which are not covered against under the "Subject Policy."

5.30. To the extent that any relief sought or which might be awarded ██████ ████████████████ is not insured against under the "Subject Policy," they are not covered.

**"Other Insurance" May Be Primary**

5.31. Upon information and belief CFA, Reynolds and Effler, collectively or individually, were insured under one or more insurance policies issued by one or more insurance carriers other than MVFIC which may apply ████████████████████ ████████████████████

21

5.32.  To the extent that such other insurance is determined to exist, then any coverage otherwise afforded by MVFIC would be excess of such "other insurance" in accordance with the MVFIC policy conditions.

### COUNT IV - Common Law Fraud

5.33.  MVFIC incorporates by reference each and every allegation made in the preceding paragraphs as though set forth fully verbatim here and now.

5.34.  When Defendant CFA applied for a Non Profit Directors and Officers Liability Insurance policy it was required to complete an application which was signed by its President, James T. Reynolds on July 30, 2007.

5.35.  The "Application" under **Section VI. CLAIM INFORMATION**, asked the question:

> *18.  Within the last 5 years, has any inquiry, complaint, notice of hearing, claim or suit been made (including, but not limited to, Equal Opportunity Commission, State Human Rights Boards, Municipal, State, or Federal Regulatory Authorities),against the Organization, or any person proposed for insurance in the capacity of either Director, Officer, Trustee, Employee or Volunteer of the Organization?*

The answer supplied to this question was **"No."**

5.36.  The "Application" under **Section VI. CLAIM INFORMATION**, asked the question:

> *19.  Is any person proposed for this insurance aware of any fact, circumstance, or situation, which may result in a claim against the organization or any of its Directors, Trustees, Officers, Employees, or Volunteers?*

The answer supplied to this question was **"No."**

5.37.  In the paragraph above the signature of James T. Reynolds on page 3 of 3 of the "Application" there was a statement that read:

22

> *The undersigned declares that to the best of his/her knowledge and belief the statements set forth herein are true. . . .*

5.38.  Based upon the "Application" submitted by CFA, MVFIC agreed to issue to CFA a policy of insurance and subsequent renewals, supported in part by representations made by Kyle Effler, all as set forth in paragraphs 3.07 through 3.10 above.

5.39.  The representations made by CFA, Reynolds, and Effler were false and consisted of misrepresentations of then existing and previous facts as set forth paragraphs 3.15 through 3.47 above.

5.40.  The representations when made by CFA, Reynolds, and Effler were known by them to be false, or in the alternative were made with a reckless disregard for whether they were true or false.

5.41.  The representations of CFA, Reynolds, and Effler were intended by them to be relied upon by MVFIC and to induce MVFIC to provide insurance coverage under the policies MVFIC issued to CFA.

5.42.  MVFIC justifiably relied upon the representations without knowledge of their falsity and issued to CFA certain insurance policies which are the subject of this action.

5.43.  After issuing these Policies to CFA,  based on the material misrepresentations made by CFA, Reynolds, and Effler, MVFIC has been harmed and caused to incur compensatory damages in the form of legal fees, defense costs, and expenses that it would not have otherwise incurred had these misrepresentations not been made.

23

# VI.

## DAMAGES

6.01. MVFIC incorporates by reference each and every allegation made in the preceding paragraphs as though set forth fully verbatim here and now.

6.02. MVFIC has incurred and continues to incur fees and expenses in the reservation of rights defense provided to CFA, Reynolds, and Effler.

6.03. MVFIC is entitled to reimbursement from CFA, Reynolds, and Effler for the fees and expenses incurred in defending them against any lawsuit or claims which may be brought against them.

6.04. MVFIC is further entitle to recover all fees, expenses, commissions, and costs it incurred in connection with the issuance of the policies that MVFIC has now learned were procured by CFA by way of misrepresentation.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Mount Vernon Fire Insurance Company, prays:

1.     That process issue and be served upon defendants requiring them to answer this complaint, and thereafter that this matter be advanced on the calendar so as to achieve a speedy hearing, pursuant to rule 57 of the Federal Rules of Civil Procedure;

2.     For a declaration that coverage under the aforesaid "Subject Policy" of insurance NDO2009078E, including the policies numbered NDO2009078, NDO2009078A, NDO2009078B, NDO2009078C, and NDO2009078D, be declared void *ab initio*, pursuant to Tenn. Code Ann. § 56-7-103;

24

3. For a declaration that MVFIC is not obligated to furnish legal counsel or otherwise provide a defense on behalf of CFA or any defendants in any lawsuit or claims now pending or hereafter brought or to any other claims or lawsuits which have been asserted by the "Government" against CFA, Reynolds, Effler or any other person or entity as described above;

4. Alternatively, for a declaration that no coverage is afforded under the insurance policies numbered NDO2009078, NDO2009078A, NDO2009078B, NDO2009078C, NDO2009078D and NDO2009078E, for the claims and demands made ███████████████████ against any of the defendants herein or in the ████████ ████ by virtue of one or more of the terms, conditions, or exclusions found in the "Subject Policy" or preceding uninterrupted series of policies and that MVFIC be relieved of any duty to defend, indemnify, or pay on behalf of CFA, Reynolds, Effler any amounts in connection ████████████████████

5. For a judgment against CFA, Reynolds, and Effler for reimbursement of all fees and expenses incurred by MVFIC in the reservation of rights defense provided against the "Government Action;"

6. For a judgment against CFA, Reynolds, and Effler for reimbursement of all fees, expenses, commissions, and costs MVFIC incurred in connection with the issuance of the policies that were procured by misrepresentation;

7. For the costs of this cause; and

8. For such other and further relief to which plaintiff may be entitled under the facts and circumstances of this cause.

25

Respectfully submitted,

SHUTTLEWORTH WILLIAMS, PLLC

BY: s/ Michael G. Derrick
MICHAEL G. DERRICK (#14820)
22 North Front Street, Suite 850
Memphis, Tennessee 38103
Telephone: (901) 526-7399
mderrick@shuttleworthwilliams.com

W. SCOTT HICKERSON (#26369)
800 South Gay Street, Suite 2031
Knoxville, Tennessee 37929
Telephone: (865) 622-7118
wsh@shuttleworthwilliams.com
**Attorneys for Mount Vernon Fire
Insurance Company**

# EXHIBITS

### to MOUNT VERNON FIRE INSURANCE COMPANY'S

*COMPLAINT FOR RESCISSION, DECLARATORY JUDGMENT, AND DAMAGES*

**EXHIBIT   A      Application**

**EXHIBIT   B      Proposal Form**

**EXHIBIT   C      Policies**

**EXHIBIT   D      ▮▮▮▮▮▮**